UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE GILLETTE COMPANY,

Plaintiff/
Counter-Defendant,

v.

ENERGIZER HOLDINGS, INC., SCHICK MANUFACTURING, INC., EVEREADY BATTERY COMPANY, INC., and ENERGIZER BATTERY, INC.

Defendant/
Counter-Plaintiff.

C.A. NO. 03 11514 PBS

**SCHICK'S OPPOSITION TO GILLETTE'S "MOTION FOR CASE MANAGEMENT CONFERENCE"**

In an apparent effort to avoid the procedural structure set forth by this Court and the Federal Rules of Civil Procedure, Gillette requests a case management conference, ostensibly to (1) set a trial date; (2) determine the scope of the Protective Order entered in this matter; and (3) construe the language and intent of Federal and Local Rules regarding the limits on document requests and interrogatories. However, this Court has already set a clearly defined schedule, which includes a Markman, summary judgment, or pretrial hearing date in October, 2005, and which allows for expert discovery and a full briefing schedule between now and then.

This Court also just addressed Gillette's May 13, 2005 request for a case management conference, in which Gillette initially requested a conference in order to set a liability trial date. In response to Gillette's letter to Judge Saris, this Court stated in an electronic order dated June 1, 2005:

> If the petition [to the Federal Circuit] is denied, I will hold a prompt case management conference. If it is allowed, I will stay the case pending the resolution of the rehearing.

*See* Electronic Order dated June 1, 2005, attached hereto as Exhibit 1. Gillette filed its second request to schedule a case management conference in its instant motion (filed on May 31, 2005), this time seeking not only to set a trial date, but also to address lingering discovery issues that have not, heretofore, been the subject of discovery motions.

Given this Court's clearly defined schedule and its June 1st Order in response to Gillette's *first* request for a case management conference, the true purpose of the instant so-called "Motion for Case Management Conference" is to address certain substantive discovery issues regarding (1) Schick's appropriate refusal to consent to the disclosure of its "Highly Confidential" documents to a high-ranking former Gillette employee, who is currently an "ongoing" consultant; and (2) Schick's responses to Gillette's discovery requests. Further, Gillette's "Motion for Case Management Conference" fails to provide this Court with a full record of the email correspondence exchanged by the parties about the "agenda" for a case management conference, or the need for such a conference. On May 20, 2005, Gillette proposed its agenda for a case management conference to counsel for Schick via email. *See* electronic mail from counsel for Gillette, Paul Lall, to counsel for Schick, Matthew Gipson, dated May 20, 2005, attached hereto as Exhibit 2. In response to Gillette's email, counsel for Schick stated that a case management conference was not a means for Gillette to avoid filing the appropriate discovery motions before the Court. *See* electronic mail from Mr. Gipson to Mr. Lall dated May 23, 2005, attached hereto as Exhibit 3. Schick's counsel also pointed out that Gillette had already attempted to bring up its discovery issues during the conferences with Magistrate Judge Alexander, concerning Defendants' Motions to Compel, only to have Magistrate Judge Alexander inform Gillette that those issues were not before the Court. *Id.* Now Gillette files its

"Motion for Case Management Conference" to request that Your Honor address issues that have not been appropriately brought before the Court.

While Schick believes that the substantive discovery issues presented in the "Motion for Case Management Conference"[1] are the proper subject of separate ***discovery motions***, rather than the back-door subjects of a request for a "case management conference," Schick responds to each of these substantive discovery issues as follows:[2]

**1. Gillette May Not Disclose Schick's Highly Confidential Material to Robert Trotta, A Recently Retired Gillette Executive Now Retained Under An "Ongoing Consulting Arrangement."**

Gillette has named as an expert in this matter a recently retired, high level employee who worked at Gillette for over 30 years. When the Protective Order in this case was entered, Mr. Trotta was both an employee and a Director of New Concepts for Gillette.

Paragraph 1 of the Stipulated Protective Order defines the term "party" as including "the named parties to this litigation . . . and all employees . . . of any of the foregoing entities." Paragraph 6(c) of the same Protective Order, in pertinent part, restricts the disclosure of Highly Confidential material to "Bona fide consultants, whether testifying or not, and experts, whether testifying or not, and any other person requested by counsel to give testimony, or otherwise to assist in trial preparations in this action, to the extent necessary for the conduct of this action, but ***only if those persons are not a Party to this action and are not officers, directors or employees of a Party to this action, . . .*** " (Emphasis added).

---

1 (1) Schick's appropriate refusal to consent to the disclosure of its "Highly Confidential" documents to a high-ranking former Gillette employee, who is currently an "ongoing" consultant; and (2) Schick's responses to Gillette's discovery requests.

2 As a preliminary matter, Schick notes that Magistrate Judge Alexander has overseen all discovery-related matters in this case to date, and respectfully requests that discovery-related issues, such as the two issues that Gillette raises in its so-called "Motion for Case Management Conference," continue to be referred to her in the first instance.

Mr. Trotta was an employee of Gillette until January 11, 2005. This employer-employee relationship existed on October 15, 2003, the date the Protective Order was entered by this Court. **Mr. Trotta, in short, is a "party" as that term is defined in the Protective Order**. As such, he is forbidden by the very terms of the Protective Order at issue from becoming qualified to see the Highly Confidential materials which Gillette seeks to show him. He was disqualified from the outset and that disqualification must be honored throughout the course of this lawsuit.

While at Gillette, Mr. Trotta was actively involved in the research and development of new products that ultimately competed with Schick's products. He is the named inventor on at least two pending published patent applications (assigned to Gillette) in the United States, and at least six pending foreign applications (assigned to Gillette). Further, he is a named inventor of numerous patents (assigned to Gillette) that relate to the Mach3 product. It is clear, therefore, that during his 30-year tenure at Gillette, he was deeply involved with the development of new products and technology.

Further, despite Gillette's assertion that Mr. Trotta has been retained as a consultant for this litigation, Schick has reason to believe that Mr. Trotta's relationship with Gillette is more substantive than being a mere litigation consultant. Indeed, the clear terms of a consulting agreement dated January, 2005 require Mr. Trotta to assign future inventions to Gillette, and to assist Gillette in every way to obtain intellectual property protection for any such future inventions:

> 6. OWNERSHIP OF INVENTIONS. Consultant agrees that all ideas, conceptions, prototypes, discoveries, designs and improvements arising out of the Consultant Work done hereunder, whether or not patentable, conceived or reduced to practice by Consultant, either individually or jointly with others or in collaboration with Gillette, shall be the sole and exclusive property of Gillette, its successors and assigns. Consultant will assist and direct its agents and other representatives to assist Gillette and its nominees in every way to obtain patents and copyrights for these ideas, conceptions, prototypes,

> inventions, discoveries, writings, designs and improvements in any and all countries and to execute all papers for use in applying for and obtaining such protection thereon as Gillette may desire, together with assignments thereof to Gillette or its nominees, all at Gillette's expense. All such ideas, conceptions, prototypes, inventions, discoveries, writings, designs and improvements will be promptly reported to Gillette but will otherwise be maintained in confidence by Consultant.

*See* January 24, 2005 Consulting Agreement, a true and accurate copy of which is attached hereto as Exhibit 4. Thus, it is clear that Mr. Trotta's consulting agreement contemplates further work and development by Mr. Trotta of technology that Gillette will ultimately own and patent. It is virtually impossible to believe that Mr. Trotta will somehow be able to separate his knowledge about the substance of Schick's "Highly Confidential" development documents, learned while consulting for the purposes of this litigation, from knowledge that he may appropriately draw upon when working on substantive inventions that will ultimately be assigned to and perhaps even patented by Gillette. *See BASF Corp. v. United States*, 321 F.Supp. 2d 1373, 1380 (CIT 2004) (stating that "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so").

Gillette's "Motion for Case Management Conference" is not the first time that Gillette has requested disclosure of "Highly Confidential" material to Mr. Trotta. In litigation between Schick and Gillette currently pending in the District of Connecticut, Gillette has also named Mr. Trotta as an expert, and has also requested the disclosure of Schick's "Highly Confidential" material to him. Significantly, in its briefing in both cases, Gillette has argued that Mr. Trotta's arrangement is related to the litigation. *See*, *e.g.*, "Motion for Case Management Conference" at p. 2 (stating that Mr. Trotta "has a consulting arrangement with Gillette ***for this litigation***"). However, Gillette does not explicitly state that Mr. Trotta's consulting arrangement is *limited* to litigation services, and points to no language in January 24th Agreement that explicitly limits Mr.

Trotta's services solely to litigation services. In fact, there is explicit language that suggests just the opposite is true.

Given (1) Mr. Trotta's status at Gillette during his 30-years of employment there, (2) the plain language of the January 24th Consulting agreement, which suggests that Mr. Trotta is still actively involved in research and development of new products or improvements for Gillette, and (3) Gillette's prior admission in pleadings submitted to the District of Connecticut that Mr. Trotta has an "ongoing consulting arrangement" with Gillette, Schick has absolutely no confidence in Gillette's assertions that this 30-year veteran and former director is now, suddenly, the "bona fide" consultant and independent witness that Gillette makes him out to be. Indeed, Mr. Trotta, by all appearances, is ***exactly*** the kind of person from whom the Stipulated Protective Order is meant to prevent disclosure of Schick's Highly Confidential material during litigation. *See BASF Corp.*, 321 F.Supp. 2d at 1378-80 (disclosure of confidential material over objection by the opposing party is routinely determined by whether the witness in question is truly independent, determined by consideration of the individual's relationship to or status within the disclosing party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors).

Gillette also tries to minimize the import of the material that it seeks to show Mr. Trotta, stating that, "at issue here are a number of Schick drawings, some of which are a decade old." *See* "Motion for Case Management Conference" at p. 3. However, Gillette has never identified a specific subset of documents that it seeks to disclose to Mr. Trotta. Rather, it has asked for permission to disclose any and all "Highly Confidential" documents to its former Director and ongoing consultant, Mr. Trotta. This could, indeed, include some documents that are a decade old. However, even Schick's decade-old materials contain proprietary information about razor

concepts that Schick has initially developed, but not yet commercialized. Gillette's characterization of the Schick "decade old" documents as "unsuccessful three blade razors" is categorically false. "Motion for Case Management Conference" at p. 3. As counsel for Gillette knows, many of the three-blade razors developed over a decade ago are subjects of Schick's pending and issued patents in the United States and in foreign countries. The three-blade razors are thus protected inventions that Schick may commercialize at a future date. This Court should not grant Mr. Trotta, who is not an independent expert, access to Schick's proprietary cartridge concept development documents.

The requested disclosure could also include a number of documents related to the research and development of Schick's most recent inventions, such as the Quattro razor (first commercially available in 2003) that is the subject matter of this litigation. By all appearances, this is ***exactly*** the kind of information that the Stipulated Protective Order is meant to protect, and a blanket order allowing the type of disclosure Gillette requests would be tantamount to having no Protective Order at all. *See Digital Equipment Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491 (D. Col. 1992).

Finally, Gillette suggests that Schick's refusal to allow the disclosure of its Highly Confidential material to Gillette's former Director of New Concepts and ongoing development consultant "severely compromises Gillette's ability to conduct expert discovery and prosecute its claims in this litigation." *See* "Motion for Case Management Conference" at p. 2. However, leaving aside Mr. Trotta's 30-years-and-counting experience in the development and patenting of technology at Gillette, Gillette has made no showing that Mr. Trotta possesses qualifications as an expert witness in this case that other truly independent experts do not possess. While

admittedly inconvenient, it remains unclear how Gillette is prejudiced by being forced to find a truly independent expert to support its substantive claims in this matter.

**2. Schick's Objections to Gillette's Discovery Requests Are Appropriate Under the Clear Limitations Set Forth in the Federal Rules of Civil Procedure and the Local Rules.**

Gillette's "Motion for Case Management Conference" suggests that Schick is asserting improper objections to Gillette's discovery requests. Nothing could be further from the truth, as Gillette has, without seeking leave of this Court, served more than the number of interrogatories that are allowed under Federal and Local Rules.[3]

Local Rule 26(c) provides that:

> For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.

However, Gillette's interrogatories do not contain subparts of a basic interrogatory, which are logical extensions of the basic interrogatory as allowed under Local Rule 26(c). Instead, Gillette's interrogatories include "discrete subparts," which are to be counted against the limitation as individual interrogatories. Federal Rules of Civil Procedure 33(a).

As one example, Gillette's Interrogatory No. 5 states:

> State in detail the circumstances in which Defendants first learned of the existence of the following Patents, or any patents or patent applications corresponding in whole or in part to any of the Patents, including without limitation the date on which such information was first obtained, the source of such information, any

---

[3] Gillette claims in its "Motion for Case Management Conference" that Schick has also objected to Gillette's third set of requests for production of documents. However, due to the fact that the third set of requests is duplicative of prior requests for production of documents, Schick has not withheld the production of any documents on the basis of its valid objection that Gillette's third set of requests exceeds the scope of discovery limitations set forth by Federal and Local Rules.

efforts made to secure such information, and the substance of all such information obtained:

(a) The ‘777 Patent;

(b) The ‘869 Patent;

(c) The ‘296 Patent; and

(d) The ‘346 Patent.

*See* Gillette’s First Set of Interrogatories, attached hereto as Exhibit 5. This Interrogatory clearly contains four discrete parts, including one subpart for each of the four patents. Interrogatory Nos. 2, 6, and 7 are also examples of interrogatories in which Gillette seeks information about four separate patents in a single interrogatory. *Id.* In another interrogatory, Gillette seeks information concerning communications with at least 13 different entities. *See* Gillette’s Second Set of Interrogatories at Interrogatory No. 9, attached hereto as Exhibit 6. In total, Gillette’s first and second set of interrogatories contain over the 25 interrogatories by themselves, including discrete subparts. *See, e.g.*, *Collaboration Properties, Inc. v. Polycom, Inc.*, 244 F.R.D. 473, 475 (N.D. Cal. 2004) (patentees’ interrogatory asking for information about 26 accused products, counts as 26 discrete subparts under Rule 33(a) of the Federal Rules of Civil Procedure). Thus, *any* interrogatory in the third set would exceed the 25 interrogatory limit, regardless of the existence of discrete subparts.

Further, Gillette’s reliance on *Myers v. United States Paint Co., Div. of Grow Group, Inc.*, 116 F.R.D. 165, 165-166 (D.Mass. 1987) is entirely unfounded. As Mr. Litton pointed out in his letter to Mr. Nathan dated April 28, 2005, “[t]his case was decided approximately six years **before** Rule 33 of the Federal Rules of Civil Procedure was amended to include a 25 interrogatory limit, including all ‘discrete’ subparts.” *See* letter from Mr. Litton to Mr. Nathan dated April 28, 2005, a true and accurate copy of which is attached hereto as Exhibit 7. Gillette,

of course, did not provide the Court with this piece of correspondence.[4] Pursuant to the amendment to Rule 33, an interrogatory which asks for information on four separate and distinct patents-in-suit must clearly be counted as four individual interrogatories.

Gillette argues that Defendants' own interrogatories contain multiple subparts. Defendants do not dispute this. In fact, as pointed out by Gillette, Schick Manufacturing, Inc.'s Interrogatory No. 5 contains four discrete subparts, one for each of the four patents. It is important to note that Defendants have not asserted that each of Gillette's interrogatories, with multiple subparts, count as multiple interrogatories. Rather, Defendants have directed Gillette's attention to those interrogatories that clearly contain discrete subparts, ***i.e.***, those addressing separate and distinct patents or multiple discrete patents. ***See***, generally, Exhibit 8. Gillette has not shown that any single Defendant has served more than 25 interrogatories, including discrete subparts.

**3. Setting a Trial Date for Liability is Premature at this Time.**

As Defendants stated in response to Gillette's May 13th request that this Court schedule a case management conference, setting a trial date at this point in the litigation is premature. ***See*** letter from Richard Rochford to the Honorable Patti Saris dated May 26, 2005, a copy of which is attached hereto as Exhibit 9. Nothing has changed since the date of Mr. Rochford's letter, or since this Court's June 1st Order, declining Gillette's request for a case management conference at this time. ***See*** June 1st Order at Exhibit 1. As stated before, even if the current Federal Circuit decision stands, the Majority Opinion notes that its views are "preliminary," and based upon "an

---

4 Defendants note that Gillette has **only** appended to its "Motion for Case Management Conference" the letter from Mr. Nathan to Mr. Litton dated April 22, 2005. Thereafter, counsel for both sides debated the interrogatory limitation issue ***ad nauseam*** in an extended colloquy between April 22nd and April 28th. These letters, in which Defendants

incomplete record" that the District Court "will have every opportunity to review and revisit…". *See* letter from Mr. Rochford at Exhibit 9. The opportunity for this Court to revisit claim construction will occur in the context of the Markman hearing provided for in the Scheduling Order. At that hearing, Schick will, among other things, present evidence developed during discovery, including Gillette's admission in the prosecution of a foreign counterpart to the '777 Patent that expressly limits the scope of the claims to a 3-bladed razor.

Further, the Federal Circuit ruling only relates to *one* of the *four* patents-in-suit. This Court has construed the claims on none of the remaining three patents-in-suit, and will have an opportunity to do so for the first time during the Markman hearing that is currently scheduled to take place in October, 2005, regardless of what the Federal Circuit does with respect to the issue currently on appeal. Scheduling a liability trial date any time before the claims of the patents-in-suit have been construed is illogical, and waste of judicial resources.

Defendants respectfully submit that no case management conference is necessary at this time, as this Court has already noted in its June 1st Order.

---

identify the legal support for their objection on several occasions, are collectively attached hereto as Exhibit 8.

WHEREFORE, Defendants respectfully request that this Court:

1. Deny Gillette's Motion for Case Management Conference;

2. To the extent that this Court deems certain portions of Gillette's Motion for Case Management Conference to be in the nature of pure discovery disputes, require that Gillette brief those disputes as discovery motions and that those motions be referred to Magistrate Judge Alexander; and

3. Enter such additional and further relief as this Court deems necessary.

Respectfully submitted,

ENERGIZER HOLDINGS, INC., SCHICK MANUFACTURING, INC., EVEREADY BATTERY COMPANY, INC., and ENERGIZER BATTERY, INC.

Defendants/Counter-Plaintiffs

By their Attorneys,

/s/ Maia H. Harris
Richard D. Rochford, BBO No. 423950
Jason C. Kravitz, BBO No. 565904
Maia H. Harris, BBO No. 648208
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Randall G. Litton (admitted *pro hac vice*)
Matthew J. Gipson (admitted *pro hac vice*)
Ginta D. McNally (admitted *pro hac vice*)
PRICE, HENEVELD, COOPER, DEWITT & LITTON, LLP
695 Kenmoor, S.E.
P.O. Box 2567
Grand Rapids, Michigan 49501-2567
616/949-9610
616/957-8196 fax

June 14, 2005