UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2003CV11514-PBS

THE GILLETTE COMPANY,

Plaintiff

V.

ENERGIZER HOLDINGS, INC.,
SCHICK MANUFACTURING, INC.,
EVEREADY BATTERY COMPANY, INC.,
AND ENERGIZER BATTERY, INC.,

Defendants

**ORDER ON**

**MOTION FOR CASE MANAGEMENT CONFERENCE TO:**
**(1) SET DATE FOR LIABILITY TRIAL**
**(2) CONSTRUE PROTECTIVE ORDER**
**(3) CONSTRUE FEDERAL AND LOCAL RULES**
**ON NUMBER OF INTERROGATORIES**
**AND DOCUMENT REQUESTS**
(Docket # 232)

and

**DEFENDANTS' MOTION TO VITIATE THE**
**ATTORNEY CLIENT PRIVILEGE**
(Docket # 238)

**and**

**DEFENDANT/COUNTER-PLAINTIFFS' MOTION
PURSUANT TO FED. R. CIV. P. 37(a) TO COMPEL
DISCOVERY RELATING TO ROBERT A. TROTTA
AND REQUEST FOR HEARING
(Docket # 256)**

ALEXANDER, M.J.

This case is once again before this Court for rulings on discovery motions filed by both the defendants, Energizer Holdings, Inc., Schick Manufacturing, Inc., Eveready Battery Company, Inc., and Energizer Battery, Inc., (collectively, "Schick"), and the plaintiff, The Gillette Company, Inc. ("Gillette"). The parties appeared before the Court on September 23, 2005 for a hearing on Schick's Motion to Vitiate the Attorney-Client Privilege ("Motion to Vitiate"), Schick's Motion Pursuant to Fed. R. Civ. P. 37(a) to Compel Discovery Relating to Robert A. Trotta and Request for Hearing ("the Trotta Discovery Motion"), and Gillette's Motion for Case Management Conference ("Case Management Motion"). The Case Management Motion initially asked the Court to do three things: set a date for a liability trial; construe the protective order; and construe the relevant procedural rules governing the number of interrogatories and document requests. The District Court, in referring the Case Management Motion to this Court,

reserved the issue of the liability trial date for itself. Additionally, following the September 23 hearing, and at the Court's urging, the parties resolved that portion of the Case Management Motion seeking construction of the rules relevant to interrogatories and document requests. The only portion of the Case Management Motion that remains, therefore, is Gillette's request that the Court construe the protective order. For the reasons set forth more fully below, the Court ALLOWS Gillette's motion regarding construction of the protective order and DENIES both the Motion to Vitiate and the Trotta Discovery Motion.

## RELEVANT BACKGROUND

The underlying dispute between Gillette and Schick involves a claim of patent infringement related to wet shaving safety razors with multiple blades. Gillette filed a patent application for United States Patent No. 6,212,777 ("the '777 patent") with the United States Patent and Trademark Office ("USPTO") on May 17, 1996. The '777 patent was assigned to Gillette by its inventors, Dr. John Terry and Mr. Bernard Gilder. On April 3, 1997, the USPTO Examiner ("Examiner") issued an Office Action rejecting the claims of the '777 patent for several reasons, including that it was unpatentable in light of a prior patent, the *Welsh* patent. The Examiner found that the patent "taught" that exposure of the blades on a razor can go from negative on the first blade to positive on the last

blade (progressive exposure), and that it would have been obvious to one of ordinary skill to have modified the patent to include more blades in the middle at zero exposure. Outside counsel for Gillette, William Booth, then met with the Examiner to discuss possible amendments to the patent to overcome the prior art in the industry. Gillette amended the patent and characterized the *Welsh* patent as only teaching exposure for two-blade razors.

The Examiner then issued a final rejection of the application on October 16, 1997, again finding that the *Welsh* patent taught a razor with the first blade exposure being negative and the second blade exposure being positive. Mr. Booth, on behalf of Gillette, appealed the decision to the Board of Patent Appeals and Interferences ("Board") in 1998. The Board issued its decision on August 30, 2000, reversing the Examiner's rejection of the patent claims. The Board found that the *Welsh* patent did not teach or suggest a combination of positive and negative exposures for a given blade unit, and that the '777 patent could be issued.

In the summer of 2003, prior to Schick's launch of its four-bladed Quattro® razor, Gillette filed a complaint alleging patent infringement. Gillette also sought a preliminary injunction to prevent Schick "and all persons acting in concert or participation with [Schick], from infringing [Gillette's] rights in Unites States Patent No. 6,212,777. . . ." Plaintiff's Motion for Preliminary Injunction at 1.

One of Schick's defenses to Gillette's claims is that the '777 patent is unenforceable because Gillette intentionally engaged in fraud in obtaining the patent. Schick asserts that Gillette withheld highly material information from the USPTO, mischaracterized the information it did supply, and made false statements concerning the state of the art. Schick states, for example, that Gillette made an outright false statement when it claimed that the *Welsh* patent did not teach a razor with a negatively exposed first blade and a positively exposed second blade. Schick avers that Gillette's actions must have been intentional because both the Sensor® patent and Gillette's own adjustable Trac II products had a negatively exposed first blade and a positively exposed second blade. Schick also avers that but for Gillette's fraudulent actions, the '777 patent would not have been issued. In support of this assertion, Schick cites the August 30, 2000 Board decision that references Gillette's assertions concerning the *Welsh* patent not teaching a negatively exposed first blade and a positively exposed second blade.

## ANALYSIS

### I.   Schick's Motion to Vitiate the Attorney Client Privilege

Schick claims that, as a result of ongoing discovery, it now has substantial evidence that Gillette committed fraud during the prosecution of the '777 Patent. Schick avers that Gillette committed fraud by intentionally withholding highly

material information from the USPTO and the Board, by mischaracterizing what information it did supply, and by making outright false statements about the state of the art. In light of the alleged fraud, Schick claims that it is entitled to discovery of, and access to, allegedly privileged documents that concern or relate to the filing and prosecution of the '777 Patent. Schick asks the Court to vitiate the attorney-client privilege that may attach to the documents in question, or, in the alternative, to review the documents *in camera* to determine whether there is a *prima facie* case of fraud.

In order to vitiate the attorney-client privilege, Schick must make a *prima facie* showing of common law, or *Walker Process*, fraud, and that the communications otherwise subject to the attorney-client privilege were "made in furtherance of a crime or fraud." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 807 (1st Cir. 2000) (citations omitted). *Walker Process* fraud requires a showing of "deceptive intent together with a clear showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or omission." Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1071 (Fed. Cir. 1998). "Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of *Walker Process* fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO

6

will not suffice." Id. Further, the evidence must be more than mere assertions that the party intentionally withheld information. In re Spalding Sports Worldwide, Inc., 203 F. 3d at 808.

The problem for this Court, in trying to decide the Motion to Vitiate, is that even a *prima facie* finding of fraud may directly affect one of the dispositive issues in this case. In response to Gillette's complaint alleging patent infringement, Schick asserted, as its Fourth Affirmative Defense, that:

> Gillette's claim is barred and the '777 Patent is unenforceable because of Gillette's unclean hands and/or inequitable conduct before the United States Patent and Trademark office, including without limitation Gillette's failure to disclose material prior art references, including blade exposure data from its own Sensor razor, during the prosecution of the '777 Patent.

Defs.' Answer to First Am. Compl. and Countercls. at 5. Schick presents a similar assertion in Count II of its counterclaim, which seeks a declaratory judgment of invalidity and unenforceability of all patents in suit. Although a decision on the Motion to Vitiate would not be immediately dispositive of the case, this Court's decision may have a dispositive effect because the fraud necessary to vitiate the attorney client privilege would also make the '777 patent unenforceable. Because this Court is not in a position to make a determination on dispositive issues, it must DENY Schick's Motion to Vitiate.

## II. Schick's Motion to Compel Discovery Related to Robert A. Trotta

Schick has also filed a motion for an order to compel discovery related to Robert A. Trotta, an expert for Gillette. Mr. Trotta was hired as a consultant to Gillette on January 24, 2005, shortly after he retired from Gillette on January 1, 2005. Schick's Opp'n to Gillette's "Motion for Case Management Conference" at 4 and Exhibit 4, Consulting Agreement. Prior to retiring, Mr. Trotta had worked for Gillette for more than thirty years. According to Gillette, Mr. Trotta is uniquely qualified to serve as an expert in this case. He has over thirty years of experience in the wet shaving business. While employed with Gillette, Mr. Trotta "was involved in all aspects of new product development at Gillette, and as such was informed of many high level business decisions and privy to regular communications with Gillette's in-house counsel." Gillette's Opp'n to Defs.' Mot. to Compel Disc. Relating to Robert A. Trotta at 2-3. According to the Consulting Agreement, Mr. Trotta is responsible for providing services for the on-going patent dispute between Gillette and Schick.

Fed. R. Civ. P. 26(a)(2)(B) requires disclosure of all things "considered" by an expert witness in forming his opinion. Materials that would otherwise be deemed privileged or protected by the work product doctrine are subject to disclosure if they are provided "to a testifying expert in connection with his

8

testimony." In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001). All documents produced to an expert for the purpose of preparing an expert opinion are subject to disclosure including documents that the expert did not rely on in forming his opinion. Id. Gillette asserts that it has complied with these requirements because the documents included with Mr. Trotta's expert reports already include all of the documents that Gillette provided to Mr. Trotta to prepare his reports.

Schick claims, however, that in addition to the documents that Gillette provided to Mr. Trotta in his capacity as an expert, Gillette must also produce all documents that Mr. Trotta had access to as an employee of Gillette that influenced his expert opinion. Def./Counter-Pls.' Mot. Pursuant to Fed. R. Civ. P. 37(a) to Compel Disc. Relating to Robert A. Trotta and Req. Hr'g at 1 ("Schick's Motion to Compel"). In support of its assertion that it is entitled to all documents that Mr. Trotta was exposed to as an employee if the documents relate to the issues in question, Schick relies upon Monsanto Co. v. Aventis Cropscience, N.V., 214 F.R.D. 545, 547 (E.D. Mo. 2002).

The facts in Monsanto, however, differ from those in the instant case. The plaintiff in Monsanto sought the production of a particular test used by the defendant to determine if a patent had been infringed. Id. at 546. The plaintiff

asserted that the work product privilege was waived when defendant's expert was exposed to the test results as an employee. Id. at 548. The Court then made a determination of what relation the test had to the expert's role as an expert, stating that "the courts should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion." Id. at 547. The Court granted the motion to compel production, finding that there was "at least an ambiguity as to whether the test results ultimately informed [the] expert['s] opinion in [the] case." Id. at 549.

In the instant case, Schick seeks every document "considered by Mr. Trotta, including in the course of his employment by Gillette, relating to the subject matter of his expert opinions and the incorporated declarations." Schick's Motion to Compel at 2. Schick has failed, however, to demonstrate that information that Mr. Trotta was exposed to as an employee influenced his expert reports. Schick's motion to compel discovery relating to Mr. Trotta is therefore DENIED.

### III. Gillette's Motion for Case Management Conference to Construe Protective Order

Discovery in this case is subject to the Stipulated Protective Order filed by the parties and entered by the Court on October 14, 2003. The Protective Order

limits disclosure of materials labeled "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" to:

> Bona fide consultants, whether testifying or not, and experts, whether testifying or not, and any other person requested by counsel to give testimony, or otherwise to assist in trial preparations in this action, to the extent necessary for the conduct of this action, but only if those persons are not a Party to this action, of a competitor of a Party to this action or of any affiliates of either.

Schick has refused to grant Mr. Trotta, a Gillette expert, access to information marked "Highly Confidential" based on Mr. Trotta's past and present relationship with Gillette. Schick asserts that because Mr. Trotta was a Gillette employee for 30 years and did not retire until after the extant litigation commenced, he is not entitled to review "highly confidential" documents. Additionally, Schick asserts that Mr. Trotta's current agreement with Gillette for consulting services related to the patent dispute between Gillette and Schick suggests that Mr. Trotta is more than just an expert for this case.

Although Mr. Trotta was an employee when the protective order was initiated, that alone does not disqualify him as an independent expert. An expert is qualified as an independent expert when he "is not a present employee . . . the protective order does not exclude former employees from qualifying as independent experts . . . the employee neither participates in the [former

employer's] decision making process nor actively researchers on behalf of the [former employer] . . . [and the expert] is willing to abide by the terms of the protective order." Ares-Serono, Inc., v. Organon Int'l B.V., 160 F.R.D. 1, 3 (D. Mass. 1994). In Ares-Serono, the defendants asserted that in addition to the continued association with the plaintiffs through an agreement to assign patents, the expert "[would] not be able to avoid inadvertently applying the confidential information he [would] acquire from defendants in the future." Id. at 3. The Court disagreed, finding that the expert qualified as an independent expert under the terms of a relevant protective order.

Mr. Trotta satisfies all of the conditions set out in Ares-Serono: he is no longer employed by Gillette; there is no evidence that he participates in Gillette's business decision-making process or actively researches for Gillette; the protective order does not explicitly forbid a former employee from serving as an expert; and it appears that Mr. Trotta is willing to abide by the terms of the protective order.

The determination of whether someone in Mr. Trotta's position should be alllowed to serve as an expert "should rest on considerations of the individual's relationship to or status within the receiving party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors." Digital Equip. Corp.

v. Micro Tech., Inc., 142 F.R.D. 488, 491 (D. Colo. 1992). Mr. Trotta's Consulting Agreement clearly states that it is for the "on-going patent dispute between" the parties and may be terminated early upon "settlement and/or final resolution" of the patent dispute. Schick has failed to show that Mr. Trotta is not an independent expert. For these reasons, Gillette's motion to construe the protective order is ALLOWED.

**Conclusion**

For all the reasons stated above, the Court ALLOWS Gillette's Case Management Motion and DENIES the Motion to Vitiate and the Trotta Discovery Motion.

SO ORDERED.

11/9/05
Date

/s/ Joyce London Alexander
United States Magistrate Judge